**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FAMILY DOLLAR STORES OF MISSOURI, LLC, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CV-572-SRW |
| | ) | |
| TSAI'S INVESTMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Tsai's Investment, Inc.'s Motion to Dismiss Count II of Plaintiff's Second Amended Complaint, ECF No. 61, and Motion for Judgment on the Pleadings as to Count I of Plaintiff's Second Amended Complaint, ECF No. 63. Plaintiff Family Dollar Stores of Missouri, LLC filed responses, ECF Nos. 75, 76. The motions are fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). For the following reasons, the Court will dismiss Count II for failure to state a claim and grant judgment on the pleadings as to Count I of Plaintiff's Second Amended Complaint.

**I.      Background and Second Amended Complaint**

On September 30, 2019, Plaintiff Family Dollar Stores of Missouri, LLC ("Family Dollar") entered into a Lease Agreement (the "Lease") with Tsai's Investment, Inc. ("Tsai") for a commercial premises located at 8618 Olive Boulevard, University City, Missouri (the "Premises"). The Lease term was for twenty years, which included an initial five-year term and three five-year tenant options. Family Dollar asserts it spent in excess of $500,000 finishing, improving, and fixturing the Premises prior to opening for business on January 9, 2020.

On April 6, 2021, Family Dollar received a letter from Tsai, dated March 31, 2021, which stated:

> Please be advised the Demised Premises [8618 Olive Blvd.] within RPA-1, as defined in the Redevelopment Agreement by and among the City of University City, Missouri and others has been assigned/transferred to the Condemning Authority described therein. We have been instructed to provide you notice of the Condemning Authority's request that you deliver full possession of the Demised Premises on or before June 28, 2021. All remaining monthly rent payments are to be paid through the end of your occupancy in compliance with the terms of the Lease.

ECF No. 56-1 (hereinafter "Termination Notice").[1]

Family Dollar asserts it was unaware the City of University City (the "City") had filed a Petition in Eminent Domain (the "State Action") in May of 2020 until it received the Termination Notice. *See City of University City, Mo. v. SSC Acquisitions, Inc., et al.*, Case No. 20SL-CC02566 (Cir. Ct. of St. Louis Cnty). Family Dollar states it was sent a second letter, dated April 1, 2021, from Novus Management,[2] directing it to remit all remaining lease payments to "U City, LLC."

In September of 2020, prior to Family Dollar's receipt of the two letters, the State Court determined the City had the right to acquire fee simple ownership of three parcels, including the Premises. On March 29, 2021, after the parties to the State Action arbitrated their claims related to compensation for the taking, the City paid $6,368,700.00 (the "Award Funds") into the registry of the State Court. On April 16, 2021, Tsai moved the State Court to release the Award

---

[1] The Court will consider all attachments to the second amended complaint and the answer as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.").

[2] Novus Management and the City of University City were previously defendants in this action; however, on February 7, 2022, this Court dismissed them as parties for Plaintiff's failure to state a claim. *See* ECF Nos. 45, 46.

Funds. Family Dollar alleges that it repeatedly asked Tsai and the City how its claims related to the condemnation would be resolved, but neither entity responded.

On May 7, 2021, Family Dollar notified the City in writing that in order to mitigate its damages, but without waiver of any claims, it would comply with the Termination Notice and vacate the Premises on or before June 28, 2021. On May 26, 2021, the State Court entered an order granting Tsai's request to release the funds, and the following day a Payout Order was issued directing the clerk to pay the entirety of the Award Funds to Tsai.

Plaintiff complains it was not added as a party to the State Action, "nor did the Condemning Authority or Landlord notify Family Dollar such that it could participate in the State Action and pursue claims under the Lease and state law." ECF No. 56 at 3. Plaintiff alleges the Lease entitled it to file a claim for relocation damages, as per the Eminent Domain provision, but the City and Tsai deprived Family Dollar of that opportunity by not adding it as a party to the State Action or notifying it of the State Action prior to sending the Termination Notice. Family Dollar cites to the Lease's Eminent Domain provision:

> 16. <u>EMINENT DOMAIN</u>. If all or any part of the Demised Premises, or any part of the Shopping Center parking, service or access areas are taken by public authorities through the power of eminent domain, then Tenant will have the right to terminate the Lease. If this Lease is terminated, then any unearned rent will be refunded to Tenant. If only a part of the Demised Premises or the parking, service or access areas are taken, and if Tenant elects not to terminate this Lease, then the rent will be reduced in the same proportion that the Demised Premises or parking, service or access areas are reduced. Landlord will restore the Demised Premises or parking, service or access areas, as applicable, to as close to their condition as existed prior to the taking as feasible. Tenant shall be entitled to file a claim for relocation damages, and Landlord shall have exclusive rights to claim damages for taking of land and improvements owned by Landlord. Landlord represents to Tenant that local custom is for Landlord and Tenant to file separate eminent domain claims with the public authority, but to the extent a single award is made by the public authority with respect to the Landlord's and Tenant's separate interests (described above), Landlord and Tenant will each be entitled to their separate claims based on their respective interests even if a single award for all damages is given by the public authority.

ECF No. 60-1 at 26-27.

The Second Amended Complaint asserts two counts. In Count I, Family Dollar alleges a breach of lease claim against Tsai for "excluding Family Dollar from the State Action and by moving the State Court for a release of the Award Funds . . . despite the fact that the Lease requires that any 'single award [] made by the public authority' be split between landlord and tenant," "by failing to add Family Dollar as a party to the State Action or take any action to notify Family Dollar of the action, so that it could make and prosecute its own claim, as required under the Lease," and "by participating in and/or organizing a structure whereby Family Dollar would be evicted from the Premises, despite the fact that the Lease does not permit the Lease to be terminated." ECF No. 56 at 7.

In Count II, Family Dollar alleges a breach of an implied covenant of good faith and fair dealing. Family Dollar asserts Tsai has inappropriately "attempted to use a statement in the Lease, acknowledging that the [P]remises [is] within a redevelopment district, to claim that Family Dollar was informed and aware of the condemnation." *Id.* at 8. Family Dollar further points to the Eminent Domain clause to argue the Lease represented "the custom was for both landlord and tenant to file separate eminent domain claims," but Tsai's failure "to notify Family Dollar of the State Action *before* condemnation or the award prevented Family Dollar from filing its separate claim[.]" *Id.* at 8-9.

Plaintiff seeks to recover the "pure losses associated with walking away from its significant tenant improvements and fixturing," "losses to its registers/point of sale equipment and other computer equipment, along with significant costs associated with opening the Premises (inventory, pre-opening and wind-down payroll, supplies, and grand opening costs)," "compensable interest in the Premises because of the condemnation proceeding," the reasonable

market value of the unexpired term of its lease, sometimes known as "bonus value," and attorneys' fees. *Id.* at 5-6.

On April 27, 2022, Tsai filed a motion to dismiss Count II and a motion for judgment on the pleadings as to Count I. ECF Nos. 61, 63. Family Dollar opposes both motions, ECF Nos. 75, 76, and Tsai has filed replies, ECF Nos. 79, 80.

## II.    Legal Standard

### A.  Motion to Dismiss

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but must include sufficient factual information to provide the "grounds" on which the claim rests, and "to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555, 597 n.3. *See also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quoted case omitted). On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555-56; Fed. R. Civ. P. 8(a)(2).

**B. Motion for Judgment on the Pleadings**

"A motion for judgment on the pleadings should be granted when, accepting all facts pled by the nonmoving party as true and drawing all reasonable inferences from the facts in favor of the nonmoving party, the movant has clearly established that no material issue of fact remains and that the movant is entitled to judgment as a matter of law." *Schnuck Mkts., Inc. v. First Data Merch. Servs. Corp.*, 852 F.3d 732, 737 (8th Cir. 2017) (cited case omitted).

A motion under Rule 12(c) is determined by the same standards that are applied to a motion under Rule 12(b)(6). *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1109 (8th Cir. 2017). To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plaintiff "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf*, 517 F.3d at 549 (citing *Twombly*, 550 U.S. at 555, 597 n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The Court accepts as true all of the factual allegations contained in the Second Amended Complaint, even if it appears that "actual proof of those facts is improbable," and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555–56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678. In considering a Rule 12(c) motion, the Court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.

III.     **Discussion**

**A. Motion to Dismiss Count II of the Second Amended Complaint**

Defendant Tsai argues this Court should dismiss the breach of implied covenant of good faith and fair dealing claim because Family Dollar does not identify express terms in the Lease which would confer discretion upon Tsai, and is impermissibly using the covenant of good faith and fair dealing claim in an attempt to create contractual obligations which do not exist.

In response, Family Dollar asserts it sufficiently pled the elements for a breach of implied covenant of good faith and fair dealing claim. Family Dollar argues its Second Amended Complaint plausibly alleges the Lease entitled it to file a claim for damages due to the condemnation, and Tsai breached the implied covenant by preventing it from filing a claim and not providing proper notice of the State Action. Family Dollar contends the "factual allegations (which Landlord does not dispute), that *Landlord actively opposed* Plaintiff's attempt to intervene in the State Action and make its separate claim for damages, are sufficient to plead that Landlord had discretion under the Lease, which Landlord exercised in such manner to evade the spirit of the Lease." ECF No. 75 at 4 (emphasis in original).

In Reply, Tsai emphasizes Family Dollar has not pointed to a specific express provision in the Lease which would give rise to a breach of the implied covenant. Tsai attaches two documents: (1) the Notice of Arbitration Award in Lieu of Commissioners' Award; and (2) the Arbitration Award. ECF No. 80-1. Tsai argues: "Given that the condemnation award only included 'damages for taking of land and improvements' owned by Tsai and not Plaintiff's 'relocation damages,' Tsai's acceptance of the award was in accordance with the express terms of the Lease." ECF No. 80 at 8. Moreover, Tsai asserts that although the Lease permitted each party "to file separate eminent domain claims with the public authority," it did not give Plaintiff

a right to file a claim for relocation damages in the State Action. Tsai cites to the "publicly-available Redevelopment Agreement – expressly identified in the Lease" and attached to Tsai's Answer to the Second Amended Complaint, ECF No. 60-2, which provides that claims for relocation payments must be filed with the Office of Relocation Assistance within six months of the date of displacement. Plaintiff was aware of the condemnation no later than April 6, 2021, and Plaintiff could have filed a claim for relocation payments at any point before it was to vacate the Premises on June 28, 2021, or within the permitted period of time thereafter.

In a diversity jurisdiction action, the Court applies state law to predict how the highest court in Missouri would resolve the issues. *Nordyne, Inc. v. Int'l Controls & Measurements Corp.*, 262 F.3d 843, 846 (8th Cir. 2001) (citing *Salve Regina Coll. v. Russell,* 499 U.S. 225, 231 (1991)). Therefore, the instant breach of contract claims will be decided pursuant to Missouri contract law. *See S&H Farm Supply, Inc. v. Bad Boy, Inc.*, 25 F.4th 541, 547 (8th Cir. 2022) ("We begin with the breach-of-contract claim. In this diversity case, Missouri substantive law applies.") (internal citations omitted); *see also Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 370 F. Supp. 2d 923, 930 (W.D. Mo. 2005) *aff'd*, 445 F.3d 1106 (8th Cir. 2006) ("It is well-settled that 'Missouri law implies a covenant of good faith and fair dealing in every contract.'") (internal quotation omitted); *Sonderegger v. Specialized Loan Servicing, LLC*, 2022 WL 123792, *10 (E.D. Mo. Jan. 13, 2022) (applying Missouri law in breach of contract claim); *Custom Hardware Eng'g & Consulting, Inc. v. Dowell*, 919 F. Supp. 2d 1018, 1032 (E.D. Mo. 2013) (applying Missouri law in breach of contract claim).

"When interpreting lease agreements, we follow the rules of construction governing contract." *Jerseyville Mall, L.L.C. v. Shop N' Save Warehouse Foods, Inc.*, 633 S.W.3d 523, 526 (Mo. Ct. App. 2021) (quoting *Brittany Sobery Fam. Ltd. P'ship v. Coinmach Corp.*, 392 S.W.3d

46, 50 (Mo. Ct. App. 2013)). Missouri implies in every contract a covenant of good faith and fair

dealing. *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Trust Co.*, 464 S.W.3d

177, 185 (Mo. 2015) (citing *Farmers' Elec. Coop., Inc. v. Missouri Dep't of Corr.*, 977 S.W.2d

266, 271 (Mo. 1998)). This covenant contains the "implied duty of one party to cooperate with

the other party to a contract to enable performance and achievement of the expected benefits,"

and is an enforceable contract right. *Rock Port Mkt. Inc., v. Affiliated Foods Midwest Coop., Inc.*,

532 S.W.3d 180, 188 (Mo. Ct. App. 2017) (quoting *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d

405, 412 (Mo. Ct. App. 2000)). The purpose of the covenant is to "prevent opportunistic

behaviors where one party exploits changing economic conditions to the detriment of the other."

*Id.* Specifically, the implied duty prevents a contracting party from "exercis[ing] a judgment

conferred by the express terms of the agreement in such a manner as to evade the spirit of the

transaction or as so to deny the other party the expected benefit of the contract." *Martin v. Prier

Brass Mfg. Co.*, 710 S.W.2d 466, 473 (Mo. Ct. App. 1986) (internal citation omitted).

Missouri courts have found that a breach of the implied covenant occurs when a party

"utilize[s] contract language that allowed unilateral action to improperly deny the other party

from the expected benefits flowing from the contract." *Koger*, 28 S.W.3d at 412. "When a

decision is left to the discretion of one party, the question is not whether the party made an

erroneous decision but whether that decision was made in bad faith or was arbitrary or capricious

so as to amount to an abuse of discretion." *Missouri Consol. Health Care Plan v. Cmty. Health

Plan*, 81 S.W.3d 34, 48 (Mo. Ct. App. 2002) (internal citation omitted). However, "the law does

not allow the implied covenant of good faith and fair dealing to be an everflowing cornucopia of

wished-for legal duties; indeed, the covenant cannot give rise to new obligations not otherwise

contained in the contract's express terms." *Jennings v. Bd. of Curators of Mo. State Univ.*, 386

9

S.W.3d 796, 798 (Mo. Ct. App. 2012) (quoting *Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996)) (citing Missouri state law). A party bringing a breach of implied covenant claim "bears the burden of providing substantial evidence to show bad faith on the part of the defendant." *Id.* (citing *Morton v. Hearst Corp.*, 779 S.W.2d 268, 273 (Mo. Ct. App. 1989)).

To succeed on a breach of implied covenant of good faith and fair dealing claim, the plaintiff must first identify an express term in the contract conferring a discretion upon the defendant to exercise a unilateral action before the plaintiff can show the defendant acted in bad faith. *See, e.g., Jennings*, 386 S.W.3d at 799 (plaintiff alluded to defendant's violation of a "Faculty Handbook," "the terms of the plaintiff's contract," and defendant's "duties"; court found plaintiff did not identify express terms in the contract conferring discretion on defendant); *see also Koger*, 28 S.W.3d at 413 (finding a letter suggesting plaintiff should increase his insurance premium and notifying plaintiff that premium would increase unless he directed otherwise did not constitute a discretion conferred on defendant).

If the first element is met, the plaintiff must then show defendant exercised discretion in bad faith to improperly deny an expected benefit of the contract. *See Martin*, 710 S.W.2d at 474-75 (holding defendant breached the implied covenant where defendant had power to interpret contract terms and did so in bad faith by not providing adequate notice concerning termination of employee benefit coverage); *Missouri Consol. Health Care Plan*, 81 S.W.3d 47-48 (plaintiff must show defendant used its discretion in bad faith); *Cordry*, 370 F. Supp. 2d at 930 (holding defendant's lack of diligence was not the same as bad faith).

In this case, Family Dollar's allegations that Tsai improperly failed to provide notice of the State Action, falsely represented all claims related to the condemnation were resolved when

10

it motioned for disbursal of the Award Funds, and opposed Family Dollar's motion to intervene, are insufficient to state a claim for breach of an implied covenant of good faith and fair dealing. As Tsai argues, Family Dollar fails to point to any express terms in the Lease conferring Tsai with unilateral discretion as it relates to the above stated actions. Although the Eminent Domain provision of the Lease states it is "local custom" for Landlord and Tenant to file separate condemnation claims, nothing in the Lease requires Tsai to provide notice of, or add Family Dollar as a party to, the State Action. Further, the Eminent Domain provision describes the damages Tsai is entitled to as "exclusive rights to claim damages for taking of land and improvements owned by Landlord." ECF No. 60-1 at 26-27. Because the condemnation award only included damages for the taking of land and improvements owned by Tsai, and not Plaintiff's 'relocation damages,' Tsai's acceptance of the Award Funds was in compliance with the express terms of the Lease. *See* ECF No. 80 at 8.

Notably, the Eminent Domain provision confers express discretion upon Tsai as to other matters, further evidencing that the mere reference to a "local custom" was not intended to place a contractual obligation upon Tsai. "The just interpretation of a contract arises on the whole subject matter. It must be viewed from end to end and corner to corner, and all its terms pass in review; for one clause may modify, limit, or illuminate the other." *State Mut. Life Assurance Co. of Worchester, Mass v. Dischinger*, 263 S.W.2d 394, 401 (Mo. 1953). For example, in the instant Lease, the Eminent Domain provision confers express discretion on Tsai if there is a partial Demise: "Landlord will restore the Demised Premises or parking, service or access areas, as applicable, to as close to their condition as existed prior to the taking as feasible." ECF No. 60-1 at 27. This sentence explicitly burdened Tsai with total responsibility regarding repair of the Premises in the event that there was a partial taking, and in so doing, created an opportunity for

11

Tsai to exercise its discretion in bad faith. Had the taking only been partial and Tsai failed to restore the Premises to its previous condition, Family Dollar would be able to cite to this provision in a breach of implied covenant claim. If the parties intended to confer discretion on Tsai to provide notice of any state eminent domain action, they could have done so.

In further support of its implied covenant claim, Family Dollar points to Section 30 of the Lease, which states that "Tenant acknowledges that Landlord has disclosed that the Demised Premises are within RPA-I, as defined in the Redevelopment Agreement . . . and this Lease may be freely assigned by Landlord in connection therewith." ECF No. 60-1 at 41-42. Family Dollar argues this provision shows that Tsai should have provided earlier notice of the State Action. Similar to the Eminent Domain provision, the Court cannot find that Section 30 confers discretion on Tsai to notify Family Dollar of any specific proceedings, including the State Action. Rather, Section 30 appears, on its face, to be an acknowledgment that the leased property was subject to eventual redevelopment.

Instructive here to the instant matter is *Cordry v. Vanderbilt Mortgage & Finance, Inc.*, 370 F. Supp. 2d 923, 930 (W.D. Mo. 2005) *aff'd*, 445 F.3d 1106 (8th Cir. 2006). In *Cordry*, the plaintiff alleged the defendant breached the implied covenant of good faith and fair dealing via a financing proposal where defendant had sole discretion regarding a financing offer. In dismissing the claim, the Court found that a lack of diligence is not the same as demonstrating bad faith." *Id.* Similar to the defendant in *Cordry*, it is arguable that Tsai lacked diligence by not notifying Family Dollar that the City had officially instigated a condemnation action, but lacking diligence does not rise to the level of acting in bad faith, especially where a notice provision did not exist in the express terms of the contract.

12

As to Family Dollar's allegation that Tsai falsely represented to the State Court that all claims related to the condemnation were resolved when asking for disbursal of the Award Funds, Family Dollar has once again not identified an express provision in the Lease that would prevent Tsai from making such a representation. Nor has Family Dollar identified an express provision in the Lease that would prevent Tsai from opposing Family Dollar's motion to intervene. The Eminent Domain provision of the Lease provides that "local custom is for Landlord and Tenant to file separate eminent domain claims with the public authority," and "Landlord shall have exclusive rights to claim damages for taking of land and improvements owned by Landlord." Tsai's motion to the State Court to disburse the Award Funds did not deviate from the provision allowing it to recover damages from the taking. Again, the plain language of the Lease did not expressly confer a discretion on Tsai to add Family Dollar to the proceedings, nor did it grant discretion to Tsai to determine whether it might oppose any action Family Dollar might take in the condemnation proceedings.

The Redevelopment Agreement expressly identified in the Lease and attached to Tsai's Answer to the Second Amended Complaint, ECF No. 60-2, provides that claims for relocation payments must be filed with the Office of Relocation Assistance within six months of the date of displacement. Plaintiff was aware of the condemnation proceeding no later than April 6, 2021, and vacated the Premises on June 28, 2021. Family Dollar could have filed a claim with the Office of Relocation Assistance for relocation costs and expenses at any point authorized by the Lease, the Redevelopment Agreement, or applicable law. Under the terms of the Lease, Family Dollar's rights to claim relocation damages were separate from Tsai's exclusive rights to claim damages from the City for the taking of land and improvements owned by Tsai.

13

Not only does Family Dollar fail to point to express terms in the Lease conferring discretion on Tsai, but it has not cited to any Missouri case law that would support a claim for breach of the implied covenant of good faith and fair dealing. Family Dollar simply argues the authorities Tsai cites in its Motion are inapposite. Family Dollar has not cited to any specific, relevant authority, similar to the facts in this case, to support that Tsai used an expressly conferred discretion to act in bad faith against Family Dollar.

Accordingly, Tsai's Motion to Dismiss will be granted as to Count II of the Second Amended Complaint.

**B. Motion for Judgment on the Pleadings as to Count I of the Second Amended Complaint**

Family Dollar alleges Tsai materially breached the Lease by failing to notify it or include Family Dollar in the State Action, as well as by moving for the release of the Award Funds. Family Dollar claims, pursuant to the Lease, that Tsai owes it damages, including part of the Award Funds. Family Dollar also alleges Tsai breached the quiet enjoyment provision of the Lease.

Tsai contends the breach of contract claim should be dismissed for two reasons. First, the obligations asserted by Family Dollar do not exist in the Lease, expressly or implicitly. Tsai asserts the Lease did not require Tsai to notify Family Dollar of the condemnation proceeding or add it as a defendant to the State Action, and it did not prohibit Tsai from receiving the entirety of the Award Funds. Second, Tsai argues the damages sought are unavailable because the Lease limits Family Dollar to relocation damages or rent abatement. The Second Amended Petition does not seek either of those types of damages.

The Court previously denied Tsai's motion to dismiss the breach of lease claim for failure to state a claim. ECF No. 45. However, the record previously included only select portions of the

Lease. The record now includes the entire Lease agreement, the Redevelopment Agreement, and the Affidavit of Publication which states that public notice of the State Action was published three times in June of 2020.[3] As noted in the *Dischinger* case, the just interpretation of a contract arises when the "whole subject matter . . .[is] viewed from end to end and corner to corner, and all its terms pass in review; for one clause may modify, limit, or illuminate the other." 263 S.W.2d at 401. Given the opportunity to consider the entire Lease and referenced documents, the Court now reaches a different conclusion.

Section 30 of the Lease provides:

> Tenant acknowledges that Landlord has disclosed that the Demised Premises are within RPA-I, as defined in the Redevelopment Agreement by and among the City of University City Missouri . . . which contemplated the eventual redevelopment of approximately an Eight (8) mile long section of Olive Boulevard and this Lease may be freely assigned by Landlord in connection therewith.

ECF No. 60-1, 42.

The Lease also includes Section 16 concerning eminent domain. Section 16 states that if the Premises is taken by the public authority through the power of eminent domain:

> Tenant shall be entitled to file a claim for relocation damages, and Landlord shall have exclusive rights to claim damages for taking of land and improvements owned by Landlord. Landlord represents to Tenant that local custom is for Landlord and Tenant to file separate eminent domain claims with the public authority, but to the extent a single award is made by the public authority with respect to the Landlord's and Tenant's separate interests (described above), Landlord and Tenant will each be entitled to their separate claims based on their respective interests even if a single award for all damages is given by the public authority.

ECF No. 60-1, 26-27.

---

[3] ECF Nos. 60-1, 60-2, 64-1. Documents attached to a motion to dismiss are also considered part of the pleadings if they are referred to in plaintiff's complaint and are central to plaintiff's claim. *Anheuser Busch, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 4:11-CV-1220-JAR, 2011 WL 6716628 at *2 (E.D. Mo. Dec. 21, 2011) (citing *Venture Assoc's Corp. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)). Family Dollar refers to the Lease in its Amended Complaint, and the Lease is central to its claim for breach of contract.

To make a submissible breach of contract claim, Family Dollar must show, "(1) the existence of a valid contract; (2) the rights and obligations of each party; (3) a breach; and (4) damages." *Kieffer v. Icaza*, 376 S.W.3d 653, 657 (Mo. 2012) (citing *Howe v. ALD Servs. Inc.*, 941 S.W.2d 645, 650 (Mo. Ct. App. 1997)). It is well established in Missouri law that the intent of the parties is "presumed to be expressed in the plain and ordinary meaning of the language of the contract." *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 226 (Mo. 2013) (citing *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 776 (Mo. 2005)). Where the language of a contract is clear, "the intent of the parties will be gathered from the contract alone." *Id.* (citing *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428-29 (Mo. 2003)). Missouri courts have found that a contract is ambiguous "where there is duplicity, indistinctness, or uncertainty in the meaning of the words used . . . The party's disagreement about its meaning does not render a contract term ambiguous." *TNT Amusements, Inc. v. BFC Enters., Inc.*, 613 S.W.3d 403, 409 (Mo. Ct. App. 2020).

During condemnation proceedings where a property is subject to a leasehold interest, tenants are granted the right to due process of law and a right to "compensation for the value of the leasehold interest at the time of condemnation," including a right to notice and an opportunity to be heard. *Bi-State Dev. Agency of Missouri-Illinois Metro. Dist. v. Nikodem*, 859 S.W.2d 775, 778-79 (Mo. Ct. App. 1993) (citing *Millhouse v. Drainage Dist. No. 48 of Dunklin Cnty.*, 304 S.W.2d 54, 57 (Mo. Ct. App. 1957); *Seliga Shoe Stores, Inc. v. City of Maplewood*, 558 S.W.2d 328, 331-32 (Mo. Ct. App. 1977)). However, not every "properly designated Lessee is entitled to damages upon the taking of his interest in condemnation." *Id.* at 779 (citing *Seliga Shoe Stores, Inc.*, 558 S.W.2d at 332). When a "single award for damages is made without regard to the lessee's claims, the amount may be allocated between the holder of the fee interest and the owner

16

of the leasehold interest pursuant to the procedure provided in § 523.053." *Santa Fe Trail Neighborhood Dev. Corp. v. W.F. Coehn & Co.*, 154 S.W.3d 432, 442 (Mo. Ct. App. 2005) (citing *State ex rel. Missouri Highway & Transp. Comm'n v. Rantz*, 43 S.W.3d 436, 440 (Mo. Ct. App. 2001)). The landlord and tenant must then "'settle the division thereof by agreement or by litigation.'" *Id.* (quoting *Land Clearance for Redevelopment Auth. of Kansas City v. Ridge*, 781 S.W.2d 104, 106 (Mo. Ct. App. 1989)).

Missouri statute § 523.053 provides that after the commissioners' award is paid to the clerk of the court, all parties asserting an interest in the award may file a claim for their portion of the award. Family Dollar filed a motion to intervene in the State Action to claim a portion of the Award Funds. The State Court rejected Family Dollar's motion to intervene, finding Family Dollar's efforts to prevent the distribution of the Award Funds to Tsai was "inconsistent with Section 523.053 RSMO in that the Family Dollar is not a defendant and their status as a potential intervenor would not make them a defendant in this cause." ECF No. 24-2 at 2, *City of University City,* Case No. 20SL-CC02566, May 26, 2021 Order and Judgment. Family Dollar did not appeal or otherwise challenge the order and judgment of the State Court.

Family Dollar claims Tsai breached the Lease by failing to provide notice of the condemnation proceedings and refusal to share the Award Funds. As to a notice requirement, Family Dollar does not identify a specific provision in the Lease which would obligate Tsai to notify Family Dollar of the condemnation proceeding. As discussed above, the Eminent Domain provision does not expressly create an obligation upon Tsai to notify Family Dollar of the condemnation proceedings. The terms of the Lease notified Family Dollar the Premises was within the RPA-I, as defined in the Redevelopment Agreement, and was contemplated for redevelopment. Family Dollar does not contest that notice of pendency of the State Action was

17

published three times in June of 2020. However, Family Dollar claims, that because Tsai represented that it was "local custom" for Tenant and Landlord to file separate claims, Tsai breached the express language of the Lease. ECF No. 75 at 3-4.

The Missouri Court of Appeals has defined a representation as "'not, strictly speaking, a part of the contract, but rather something collateral or preliminary, and in the nature of an inducement to it, while a warranty enters into and forms a part of the contract itself.'" *Missouri Consol. Health Care Plan*, 81 S.W.3d at 40. To show Tsai breached a representation, Family Dollar must show:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of the truth, (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the representation being true, (8) the right to rely thereon, and (9) the hearer's consequent and proximately caused injury.

*Evergreen Nat. Corp. v. Carr*, 129 S.W.3d 492, 496 (Mo. Ct. App. 2004). "[W]here representations do not relate so much to a future event as to existing facts, conditions, or arrangements on which an expectation of that event may be founded, they are not to be regarded as merely promissory." *Shoup v. Tanner-Buick Co.*, 245 S.W. 364, 366 (Mo. Ct. App. 1922) (internal citations omitted).

Family Dollar points out that Tsai "represented" that the local custom is for landlords and tenants to file separate claims for compensation in a condemnation proceeding. However, Family Dollar has not alleged this representation was false. While Family Dollar argues that failure to notify it of the State Action deprived them of an expected benefit of the Lease, Family Dollar does not allege how Tsai intended to induce Family Dollar to act in any given way. Instead, Family Dollar merely argues that the representation itself is what created a responsibility on Tsai to notify it of the State Action. This Court does not find that the Lease's use of the word

18

"represents" created an obligation on Tsai to notify Family Dollar of the State Action or add it as a defendant, nor that Tsai breached the express language in the Lease.

Family Dollar also alleges the Condemning Authority and Tsai deprived Family Dollar of the opportunity to seek its contractual right under the Lease for relocation damages. ECF No. 56 at 3. However, the Second Amended Complaint does not "raise a right to relief above a speculative level" for this claim because it does not allege sufficient factual information as to how Tsai deprived Family Dollar of the opportunity to seek relocation payments from the Office of Relocation Assistance. *See Twombly*, 550 U.S. at 555, 597 n.3. Nor does the Second Amended Complaint allege any relocation damages.

Missouri courts have held that tenants may waive their interests in condemnation by contract, and that "specific provisions of a lease setting forth the respective rights of the parties in the event the demised property is condemned are valid and controlling." *St. Louis Cnty. v. Frank*, 908 S.W.2d 847, 848 (Mo. Ct. App. 1995) (quoting *State v. Jim Lynch Toyota*, 835 S.W.2d 421, 424 (Mo. Ct. App.1992)).

The Lease provides that "Tenant shall be entitled to file a claim for relocation damages, and Landlord shall have exclusive rights to claim damages for taking of land and improvements owned by Landlord." ECF No. 60-1 at 27. The Arbitration Award specifically states, the "Panel finds that damages sustained by the Defendant [Tsai] as a result of the taking by the Plaintiff, City of University City, Missouri, is $6,368,711.00, and awards that amount to Defendant as compensation for the taking." ECF No. 80-1 at 4. The interests provided for in the Arbitration Award strictly names Tsai as its recipient. The Lease agreement further provides that,

> [T]o the extent a single award is made by the public authority with respect to the Landlord's and Tenant's separate interests. . . Landlord and Tenant will each be entitled to their separate claims based on their respective interests even if a single award for all damages is given by the public authority.

19

ECF No. 60-1 at 27. Pursuant to the Lease, Landlord and Tenant are only entitled to claims that the public authority designates as addressing their respective interests. Therefore, the allocation of those damages depends on how the Award Funds addressed Tsai and Family Dollar's separate interests.

As the judge in the State Action found, the Award Funds only allocated funds for Tsai's interest in the property. The Award Funds do not address Family Dollar's right to claim relocation damages. ECF Nos. 24-2. The procedures for businesses within the eminent domain properties to seek relocation damages against the public authority, University City, are specifically addressed in the Redevelopment Agreement. ECF No. 60-2. The Award Funds addressed Tsai's claims for the land and its improvements, not Family Dollar's claims for relocation damages. Therefore, the Award Funds are not a "single award for all damages" with respect to both parties' separate interests; it is a single award for Tsai's interests.

*St. Louis County v. Frank* noted, "'It is well established that specific provisions of a lease setting forth the respective rights of the parties in the event the demised property is condemned are valid and controlling.'" 908 S.W.2d at 848 (quoting *State v. Jim Lynch Toyota,* 835 S.W.2d 421, 424 (Mo. Ct. App. 1992)). Similar to the present case, in *Frank,* the landlord was entitled to compensation for its claims during an eminent domain proceeding, unless the award included a "separate specific award" providing the tenant an award for relocation of his business or for fixtures of the tenant which were not part of the leasehold property. A single award was made in favor of the landlord, and the tenant sought to claim a portion of the landlord's award for fixtures which he had not removed from the premises. *Id.* at 847-48. As there was no "separate specific award" for the tenant's claims, *Frank* held the entire award must go to the landlord under the

plain terms of the lease agreement. As previously noted, Family Dollar also sought, without success, to intervene in the State Action and claim a portion of the Award Funds. ECF No. 24-2.

Under the terms of the Lease, Tsai and Family Dollar each had separate claims which could be filed against University City. The Lease stated that Tsai "shall have exclusive rights to claim damages for taking of land and improvements owned" by Tsai. Family Dollar "shall be entitled to file a claim for relocation damages[.]" ECF No. 60-1 at 26-27. The Lease further disclosed that the Property was "within RPA-1, as defined in the Redevelopment Agreement by and among the City of University City Missouri . . . which contemplated the eventual redevelopment of approximately an Eight (8) mile long section of Olive Boulevard and this Lease may be freely assigned by Landlord in connection therewith." ECF No. 60-1 at 42.

Thus, Family Dollar was on notice of a potential future condemnation. Family Dollar received the Termination Notice from Tsai on April 6, 2021, which gave them notice to file for relocation damages – the only damages specifically granted to Family Dollar under the terms of the Lease. The process for how to file such damages with the Office of Relocation Assistance could be found in the RPA-1 Redevelopment Agreement, which was cited in Section 30 of the Lease. ECF No. 60-2. Moreover, the Redevelopment Agreement was publicly available four months before Family Dollar even executed the Lease. *Id.* at 3.

Plaintiff argues the Court should construe the Lease as requiring Tsai to notify them of the State Action. ECF No. 76 at 3-4. However in making this argument, Family Dollar does not cite to any case law supporting that the provisions in the Lease should be interpreted to require Tsai to notify Family Dollar of the condemnation beyond the Termination Notice or Section 30 of the Lease. In the end, when Family Dollar received the Termination Notice, it had time to file

a claim with the Office of Relocation Assistance as outlined in the Redevelopment Agreement, which Family Dollar acknowledged in Section 30 of the Lease.

Regarding damages, Missouri courts have held "a party is only entitled to receive what he contracts for or its equivalent." *Amalaco v. Butero*, 593 S.W.3d 647, 651 (Mo. Ct. App. 2019) (citing *Burger v. Wood*, 446 S.W.2d 436, 442 (Mo. Ct. App. 1969)). However, Missouri law,

> provide[s] recovery for certain types of contract damages, even when they are not provided for in the contract itself . . . [C]ontract damages may include damages measured by plaintiff's injury or loss of profits or damages naturally and proximately caused by the breach that were contemplated by both parties at the time the contract was made.

*Id.* (citing *Catroppa v. Metal Bldg. Supply, Inc.*, 267 S.W.3d 812, 818 (Mo. Ct. App. 2008)).

> In Missouri a lease gives rise to a contractual relationship between the landlord and tenant with the result that damages is one remedy available to the tenant upon breach. Therefore, a tenant may be entitled to compensation for a loss which is the natural and direct consequence of the breach of a lease[.]

*Jaron Corp. v. Pellet*, 866 S.W.2d 897, 902 (Mo. Ct. App. 1993) (citing *King v. Moorehead,* 495 S.W.2d 65, 75-76 (Mo. Ct. App. 1973), and *Hamilton Music v. Gordon A. Gundaker Real Est.,* 666 S.W.2d 840, 844 (Mo. Ct. App. 1984)).

"Ultimately, the goal in awarding damages for breach of contract is to place the injured party in the same position as if the contract had been performed, and the court must reject any award of damages that would elevate the injured party to a better position." *Amalaco*, 593 S.W.3d at 652 (citing *Guidry v. Charter Comm., Inc.*, 269 S.W.3d 520, 532-33 (Mo. Ct. App. 2008)). In this case, the Lease limits Family Dollar's damages to relocation damages as it states, "Tenant shall be entitled to file a claim for relocation damages." ECF No. 60-1 at 27. Any damages beyond "relocation damages," as specified in the contract, would therefore need to be "naturally and proximately caused by the breach."

In *Amalaco*, the defendant tenant illegally sublet their apartment through Airbnb, and the landlord sought damages for the proceeds that tenants received as a result of the subletting. 593 S.W.3d at 651. The court found that "had the parties intended for Landlord to be entitled to the proceeds of Tenant's subletting," they would have included such damages in the lease. *Id.* at 652; *see also Guidry*, 269 S.W.3d at 533 (damages for breach of contract are "only those which are incidental to, and directly caused by, the breach, and may reasonably be supposed to have entered into the contemplation of the parties, and not speculative profits or accidental or consequential losses, or the loss of a fancied good bargain.)" (quoting *Weber Implement Co. v. Acme Harvesting Mach. Co.*, 187 S.W. 874, 876 (Mo. 1916)); *see also Burger*, 446 S.W.2d at 442 ("[p]redicated on the fundamental principle that a party is entitled to have what he contracts for or its equivalent," appropriate damages would be the amount in repairs reasonably required to remedy the defects and make the item conform to the plan and specifications) (internal citations omitted)). Following this rationale, the Court finds Family Dollar may only pursue relocation damages and is not entitled to "improvements and fixtures and the costs associated with opening their premises, and the reasonable market value of the unexpired term of the Lease." Nothing in the Lease contemplates such damages.

Family Dollar relies on *State ex rel. State Highway Comm'n v. Johnson*, 592 S.W.2d 854, 857 (Mo. Ct. App. 1979), to support its position that it had a right to be compensated for the taking of its leasehold interest. In *Johnson*, defendants claimed to have a fee interest in a condemned parking strip, and the trial court awarded compensation to defendants. In contrast, here, Family Dollar does not allege it exercised its right to compensation per the terms of the Lease. The Lease confined Family Dollar's damages to relocation damages. *See* ECF No. 60-1 at 26-27. Family Dollar could have filed for relocation damages with the Office of Relocation

Assistance, per the Redevelopment Agreement, which was referenced in Section 30 of the Lease. In fact, there was ample time for Family Dollar to have filed a claim for relocation damages. While Family Dollar had a right to compensation from the public authority, the Second Amended Complaint does not allege it exercised that right within the time allotted. Therefore, Family Dollar's reliance on *Johnson* does not adequately demonstrate how they have a right to compensation from Tsai under the Lease.

Lastly, Family Dollar contends Tsai breached the covenant of quiet enjoyment by participating in the State Action without adding them as a party. ECF No. 61 at 7. To have a breach of quiet enjoyment, there must be an "actual or constructive eviction of the lessee." *Shop N' Save Warehouse Foods, Inc. v. Soffer*, 918 S.W.2d 851, 859 (Mo. Ct. App. 1996) (internal citations omitted).

While Missouri courts have not ruled on whether a condemnation proceeding can give rise to a breach of quiet enjoyment, other provisions in the Lease show that a breach of quiet enjoyment did not occur in the case at bar. Section 27 of the Lease, which addresses breach of quiet enjoyment, states the following.

> 27. <u>QUIET ENJOYMENT</u>. So long as Tenant is not in default . . . , Landlord covenants and warrants that Tenant will have and enjoy during the term of this Lease the quiet and undisturbed possession of the Demised Premises together with all applicable appurtenances. Rents and other charges due under this Lease will abate during any period of time Tenant is deprived of the use of the Demised Premises.

ECF No. 62-1 at 39.

Section 27 must be read in light of the entire Lease, and in particular, Section 30, which states that "Tenant acknowledges that Landlord has disclosed that the Demised Premises are within RPA-1 … and this Lease may be freely assigned by Landlord in connection therewith." ECF No. 62-1 at 42. Section 30 illuminates the obligations of Tsai under Section 27. Moreover,

Section 30 references the RPA-1 Redevelopment Agreement, which contained instructions for how and by what point Family Dollar would need to file a claim with the Office of Relocation Assistance. ECF No. 60-2 at 79-84. Since Family Dollar agreed that Tsai may have to assign the Lease in connection with a potential condemnation proceeding, which Family Dollar explicitly acknowledges under Section 30, this Court finds that the Lease precludes Family Dollar from claiming a breach of quiet enjoyment under these circumstances.

Therefore, Family Dollar's claims were not sufficient to show that Tsai had obligations under the Lease which it may have breached. Moreover, Family Dollar does not provide sufficient evidence to show damages. Accordingly, Tsai's Motion for Judgment on the Pleadings as to Count I will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss Count II of the Second Amended Complaint, filed by Defendant Tsai's Investment, Inc., is **GRANTED.** [ECF No. 61]

**IT IS FURTHER ORDERED** that the Motion for Judgment on the Pleadings as to Count I of the Second Amended Complaint, filed by Defendant Tsai's Investment, Inc., is **GRANTED**. [ECF No. 63].

An appropriate order will accompany this Memorandum and Order.


So Ordered this 9th day of November, 2022.

STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE