**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| FAMILY DOLLAR STORES OF MISSOURI, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) ) |
| TSAI'S INVESTMENT, INC., | ) ) |
| Defendant. | ) |

No. 4:21-CV-572-SRW

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Family Dollar Stores of Missouri, LLC's Motion to Alter or Amend Judgment, ECF No. 90, and Motion to Enforce Settlement Agreement, ECF No. 93. The motions are fully briefed. On February 28, 2023, the Court held an evidentiary hearing, and these motions are now ready for disposition. The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). For the reasons discussed below, the Court will deny the Motion to Alter or Amend Judgment and Motion to Enforce Settlement Agreement.

**Background**

On September 30, 2019, Plaintiff Family Dollar Stores of Missouri, LLC ("Family Dollar") negotiated and entered into a Lease Agreement (the "Lease") with Defendant Tsai's Investment, Inc. ("Tsai") for a commercial premises located at 8618 Olive Boulevard, University City, Missouri (the "Premises"). In May of 2020, the City of University City filed a Petition in Eminent Domain, which included the Premises. Consequently, Family Dollar vacated the Premises by June 28, 2021, and Tsai was awarded $6,368,700.00 by a state court as compensation for the taking.

Family Dollar filed the instant action on May 17, 2021 asserting allegations related to the Lease, and subsequently filed an amended complaint on July 14, 2021. Tsai filed a motion to dismiss the amended complaint, which the Court granted in part. On April 6, 2022, Family Dollar filed a second amended complaint alleging two counts: Count I: breach of lease; and Count II: breach of implied covenant of good faith and fair dealing. On April 27, 2022, in response to the second amended complaint, Tsai filed a motion for judgment on the pleadings as to Count I, and a motion to dismiss as to Count II. On November 9, 2022, the Court granted both of Tsai's motions and this action was dismissed.

The parties filed three post-judgment motions. Tsai, identifying itself as the prevailing party, filed a motion seeking attorney's fees in the amount of $128,874.50. ECF No. 86. Family Dollar subsequently filed the two instant motions requesting the Court to deny Tsai's motion for attorney's fees, amend its November 9, 2022 judgment, and enter an order to enforce a settlement agreement that Family Dollar claims was orally agreed upon by the parties prior to the Court's dismissal.

### Family Dollar's Motion to Alter and Motion to Enforce Settlement

In support of its two post-judgment motions, Family Dollar summarizes the email and telephone correspondence it had with Tsai from October 12, 2022 to November 23, 2022. Attached to the motions are copies of the emails between the parties. *See* ECF Nos. 91 and 94. The timeline provided by Family Dollar in its' briefing is as follows:

- October 12, 2022: Matthew Layfield (counsel for Family Dollar) sent an e-mail to J. Vincent Keady (counsel for Tsai) with "a settlement proposal and offer" for Tsai's review. ECF No. 91-1 at 2. The proposal was in the form of a one-page letter. ECF No. 92-1 at 7.

- October 13, 2022: Mr. Keady responded and asked Mr. Layfield to forward "the proposed settlement and release agreement incorporating the terms outlined in [the] letter" so he could review it with Tsai. ECF No. 91-3 at 2.

2

- October 27, 2022: Mr. Layfield emailed a draft 'Settlement and Release' with the following disclaimer: "This is subject to our client's review and comment still, but wanted to get in your hands without further delay." ECF No. 91-4 at 2.

- October 28, 2022: Mr. Keady responded, "Our client has requested [] some revisions. Attached is a redlined and clean version thereof." ECF No. 91-5 at 2. The redline, among other edits, deleted the Confidentiality and Non-Disparagement provisions included in the original draft settlement. *See* ECF No. 92-1 at 34-42.

- Mr. Layfield attests, via Affidavit, that on October 31, 2022, he called Mr. Keady to discuss the redline. ECF No. 91-2, ¶ 10. Mr. Layfield "advised Keady that [he] thought the removal of these sections would ultimately be acceptable to [Family Dollar] and would confirm the same[.]" *Id.* Mr. Layfield further asserts that, at the time of the call, he considered this matter settled. *Id.*

- November 9, 2022: The Court granted Tsai's motion for judgment on the pleadings and motion to dismiss. ECF Nos. 84, 85.

- November 19, 2022: Mr. Keady sent an e-mail to Mr. Layfield stating, "We never received a response to our suggestions . . . . To whatever extent they were interpreted as a counter offer, they are hereby withdrawn; and, to be clear, any and all proposals from you[r] client have already been rejected." ECF No. 91-6 at 3.

On November 23, 2022, Mr. Layfield sent Mr. Keady the following email in response to the November 19th correspondence:

> That is not accurate. I called you after receiving your revisions to talk through them as I knew the wholesale deletion of the confidentiality and non-disparagement clauses were going to be an issue for our client. After the explanation of your client's thoughts on why he wanted these provisions removed, I then, accurately, predicted it would take some effort to get our client to agree to remove what is otherwise standard settlement provisions. The only thing that changed in the interim is that, to our surprise, Judge Welby ruled on your client's pending motions. We expected that you would have notified the Court that the parties are in settlement discussions, and had in fact reached a settlement, and to hold off making any rulings.
>
> Our position is that we have a settlement and release agreement. My client accepted Tsai's removal of the confidentiality and non-disparagement provisions. Attached is a clean copy with the only additional changes fixing nits such using "borrower" in multiple places. We can either enter this Settlement Agreement, or move to set aside the Order from Judge Welby and enforce the settlement

3

>and advise the Court that it was excusable neglect that the parties didn't advise the Court of the settlement of the parties and pending revisions to the Agreement. I don't think either of our clients want to spend more time and money on this case though.
>
>Please advise if this is in final form for your client and we will procure signatures.

ECF No. 91-7 at 2.

Relying on the above correspondence, Family Dollar claims the parties orally agreed to the material terms of the settlement agreement on October 31, 2022, which included the dismissal of all claims with prejudice and each party to bear its own costs and attorney's fees. Although Mr. Layfield acknowledges its client, Family Dollar, had yet to agree to the deletion of the Confidentiality and Non-Disparaging provisions, he argues they were minor, nonmaterial provisions, irrelevant to the question of whether the parties entered into an enforceable settlement agreement on October 31st. Due to the parties' dispute regarding whether a settlement agreement was formed, Family Dollar requested an evidentiary hearing on the issue. *See* ECF No. 91 at 5.

Tsai filed oppositions to each of Family Dollar's post-judgment motions. ECF Nos. 92, 101. Tsai maintains no settlement agreement had been executed. On the date the Court issued its dismissal order, Tsai asserts the parties were still actively negotiating the material and essential terms of the proposed settlement, which included its request for the removal of the Confidentiality and Non-Disparagement provisions. Tsai argues Family Dollar is downplaying the significance of the two provisions that had yet to be agreed upon prior to the Court's dismissal of this action.

Tsai cites to the plain language of the 'Confidentiality' provision of the draft 'Settlement Agreement and Mutual Release,' which explicitly states: "This paragraph is a material part of

4

this Agreement." *See* ECF No. 92-1 at 17. Tsai asserts it presented a counteroffer to Family Dollar on October 28, 2022, when it sent a redline version of the draft settlement agreement seeking to remove the two provisions and, by Family Dollar's own admission, the Confidentiality and Non-Disparaging provisions remained unresolved during the October 31, 2022 phone call. *See* ECF No. 91 at 5-6. Therefore, Tsai contends it was permissible to withdraw its counteroffer nineteen days later as it did not receive any confirmation from Family Dollar on whether the redline, including the deletion of the two provisions, was agreeable.

**Evidentiary Hearing**

On February 14, 2023, the Court granted Family Dollar's request for an evidentiary hearing to determine whether the parties reached an enforceable settlement agreement. ECF No. 106. The evidentiary hearing was held on February 28, 2023, and each party was allotted time to present their respective positions to the Court. ECF No. 110. Family Dollar entered 12 exhibits into the record (labeled Exhibits 1 through 12), and Tsai entered 15 exhibits into the record (labeled Exhibits D-1 to D-15). ECF No. 108.

Mr. Layfield began the hearing by summarizing the same timeline he offered in his briefings. As to the October 31st phone call, Mr. Layfield acknowledged that Mr. Keady expressed issue with the proposed Confidentiality and Non-Disparaging clauses and explained "Tsai was worried that what Family Dollar hadn't recovered in this suit they would then somehow turn around and recover from [] Tsai in the form of a breach of the confidentiality agreement or the non-disparagement clause." ECF No. 110 at 8. Mr. Layfield indicated he told Mr. Keady he did not think the removal of the provisions would be a problem, but it would take him "a little bit of time to get [Family Dollar] to sign off . . . because it's abnormal for them." *Id.*

5

at 8-9. *See also id.* at 15. Despite having to follow up with his client, Mr. Layfield represented his belief the October 31st phone call resulted in "a settlement with all material terms." *Id.* at 11.

To further support his position that a settlement had been reached, Mr. Layfield pointed to email correspondence, dated November 5, 2022, between himself and Mr. Keady. Mr. Keady wrote to Mr. Layfield:

> I believe our discovery responses are due Monday. Will you consent to an additional ten (10) days to respond?
>
> Our client would prefer not to incur additional fees while we explore settlement.

*See* Pl.'s Ex. 9; Def.'s Ex. D-8. In response, Mr. Layfield wrote:

> Yes. We will consent to that 10 day extension. I will follow up with our client on Monday concerning the revisions to the Agreement too.

*Id.* Mr. Layfield argued Mr. Keady's extension request was for the purpose of "try[ing] to get this thing wrapped up. . . . Because [they] both believed that [they] had a settlement[.]" ECF No. 110 at 11.

In response to specific questions asked by the Court, Mr. Layfield represented it was not until November 11, 2022, two days after the Court dismissed this action, that Family Dollar reviewed the removal of the provisions and agreed they were not material. *See* ECF No. 110 at 17 ("it took me until [] November 11th to get my client to review the removal of them and understand [] that they weren't material"). Mr. Layfield additionally confirmed he did not tell Mr. Keady until November 23, 2022, that Family Dollar accepted the requested deletions. *See id.* at 18, 38.

Mr. Keady maintained he did not enter into a final and enforceable settlement agreement on behalf of Tsai. Mr. Keady first points to an October 12, 2022 letter from Mr. Layfield. ECF No. 110 at 20-21 (citing Def.'s Ex D-2). The letter evidences the start of settlement discussions,

6

and advises Tsai that Family Dollar "expressly reserves all rights, claims, and remedies and does not waive any defenses . . . unless and until the Settlement Agreement is *reduced to writing and signed by the parties*." Def.'s Ex D-2 (emphasis added). Mr. Keady stressed that no agreement had ever been signed by the parties as explicitly required by Family Dollar. Mr. Keady pointed to the original proposed settlement agreement, which explicitly indicated the 'Confidentiality' provision to be "a material part of the Agreement." ECF No. 110 at 22 (citing Def.'s Ex D-5; *see also* ECF No. 92-1 at 16-17). Mr. Keady further cited to the redline version he sent back to Mr. Layfield, which included wholesale deletions of both the Confidentiality and Non-Disparaging clauses. *Id.* at 23 (citing Def.'s Ex D-7; *see also* ECF No. 92-1 at 37-38). Mr. Keady confirmed he spoke to Mr. Layfield on October 31, 2022, about the proposed deletions and explained why the two provisions were important and material to Tsai. *Id.* at 23-25. Mr. Keady indicated he did not consider the matter settled at the conclusion of the October 31st phone call because Mr. Layfield expressed that it might be "difficult to convince Family Dollar to have these provisions removed . . . , but that he would confer with his client[.]" *Id.* at 25.

As to the November 5, 2022 e-mail correspondence quoted above, Mr. Keady argued his "while we explore settlement" language was intentional and evidenced a formal agreement had yet to be created. *Id.* Moreover, Mr. Keady pointed to Mr. Layfield's same-day response stating he would follow up with Family Dollar concerning Tsai's proposed revisions. Mr. Keady maintained there was no agreement at that point because Mr. Layfield still needed to seek approval from his client. Mr. Keady further contended that the very fact he filed a consent motion on November 7, 2022 for extension of time to answer, object or otherwise respond to Family Dollar's discovery, ECF No. 82, corroborated that no formal settlement had occurred between the parties. ECF No. 110 at 26. Mr. Keady argued that if the parties had reached a

7

settlement, the proper response from Mr. Layfield should have been, "[W]hat do you mean? You don't need ten additional days for discovery. We're settled." *Id.* Mr. Keady indicated, on November 9, 2022, Tsai was "still waiting to hear from Family Dollar as to whether or not they would agree to the removal of [the Confidentiality and Non-Disparaging] provisions." *Id.* at 30. Mr. Keady asserted that the behavior of the parties showed active negotiations, and nothing more.

## Discussion

As a preliminary matter, the Court first notes that although Family Dollar argues it entered into an oral settlement agreement with Tsai on October 31, 2022, neither party filed a stipulation for dismissal or formal notice that the matter was settled. Without such notification, nine days after the alleged settlement, the Court granted Tsai's motion for judgment on the pleadings and motion to dismiss for failure to state a claim. From the exhibits submitted by the parties with their briefings and at the evidentiary hearing, it appears settlement negotiations began on October 12, 2022. However, neither Family Dollar nor Tsai filed a motion requesting the Court to stay this action during such discussions. Family Dollar oddly chastises Tsai in its November 23, 2022 email for not notifying the Court that the parties were "in settlement discussions, and had in fact reached a settlement, and to hold off making any rulings." *See* ECF No. 91-7 at 2. However, Family Dollar was able to observe that Tsai had not filed any such notice, and was acutely aware two dispositive motions were pending as it had filed oppositions to both. Family Dollar had ample time to notify the Court that this matter should have been stayed pending settlement discussions. Additionally, if Family Dollar understood a settlement had been formally reached on October 31, 2022, it is surprising that a stipulation for dismissal or notice of settlement would not have been filed.

8

A federal diversity court applies the forum state's law of contract interpretation to determine whether a settlement agreement was formed. *State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apts., L.C.*, 572 F.3d 511, 514 (8th Cir. 2009); *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999). "Under Missouri law, the essential elements of a valid settlement agreement are the involvement of parties who are competent to contract, a proper subject matter, legal consideration, mutuality of obligation, and mutuality of agreement." *Ross Dress for Less, Inc. v. St. Louis Retail Outlet, LLC*, 2020 WL 1693680, at *7 (E.D. Mo. Apr. 7, 2020) (citing *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006)). "Negotiations or preliminary steps towards a contract do not constitute a contract." *J.H. v. Brown*, 331 S.W.3d 692, 701-02 (Mo. Ct. App. 2011). Rather, "[t]he creation of a valid settlement agreement requires a meeting of the minds and a mutual assent to the essential terms of the agreement." *Ross Dress for Less, Inc.*, 2020 WL 1693680, at *7 (quoting *St. Louis Union Station Holdings, Inc. v. Discovery Channel Store, Inc.*, 301 S.W.3d 549, 552 (Mo. Ct. App. 2009)). "A mutual agreement is reached when 'the minds of the contracting parties [ ] meet upon and assent to the same thing in the same sense at the same time.'" *Grant v. Sears*, 379 S.W.3d 905, 916 (Mo. Ct. App. 2012) (quoting *Kunzie v. Jack-in-the-Box, Inc.*, 330 S.W.3d 476, 483 (Mo. Ct. App. 2010)). "In determining whether a meeting of minds has occurred, the court looks at the objective manifestations of the parties." *Brooks v. Standard Fire Ins. Co.*, 2014 WL 7157357, at *1 (E.D. Mo. Dec. 15, 2014) (citing Missouri cases).

The party requesting enforcement of a settlement agreement has the burden of proving the existence of the agreement by "clear, convincing, and satisfactory evidence." *Matthes v. Wynkoop*, 435 S.W.3d 100, 106 (Mo. Ct. App. 2014) (quoting *Paragon Lawns, Inc. v. Barefoot, Inc.*, 304 S.W.3d 298, 300 (Mo. Ct. App. 2010)); *see also Kenner v. City of Richmond Heights,*

*Mo.*, 356 F. Supp. 2d 1002, 1008 (E.D. Mo. 2005). "Evidence is clear and convincing if it instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition, [such that] the fact finder's mind is left with an abiding conviction that the evidence is true." *Matthes*, 435 S.W.3d at 106 (quoting *Grant*, 379 S.W.3d at 915).

The Court agrees with Tsai that the parties did not reach a settlement agreement as to all material terms. As evidenced from the email correspondence submitted to the Court and summarized above, on October 27, 2022, Family Dollar's attorney emailed a "proposed Settlement and Release" with a disclaimer that the proposal was still "subject to [Family Dollar's] review and comment[.]" ECF No. 91-4. On October 28, 2022, Tsai's attorney returned a redlined second draft, which, in part, deleted the Confidentiality and Non-Disparaging clauses from Family Dollar's proposal. ECF Nos. 92-1 at 22, 37-38; 91-5 at 2. One of the two provisions sought to be removed by Tsai was explicitly identified by Family Dollar as a material clause. The proposed settlement agreement that Mr. Layfield originally sent to Mr. Keady included the following language:

> 7.0 Confidentiality. The Borrowers expressly understand and agree that this Agreement, the terms of this Agreement, and the allegations which compromise the Case, shall be treated as confidential and shall not be disclosed or released to any third party whatsoever, including, but not limited to, a prohibition on Borrowers posting or otherwise disclosing Information on the Internet or any other paper or electronic media outlet (including but not limited to news organization websites or newspapers, email, blogs, Facebook, Twitter, social media and all similar forms of disclosure); and not to transfer an original or any copy of this Agreement to any other person or entity. Borrowers may disclose the terms, contents, substance of and copy of this Agreement to the Borrowers' counsel, accountants, financial advisors, tax professionals retained by them, any federal, state, or local governmental taxing or regulatory authority, and except as required by law or order of court or to enforce this Agreement. **This paragraph is a material part of this Agreement.**

ECF No. 92-1 at 16-17 (emphasis added).

Family Dollar now attempts to argue that the Confidentiality provision was not material, despite designating it as such in its own proposed agreement. The Court will not permit Family Dollar to change what it had already defined as material to the agreement. Moreover, Tsai conveyed to Family Dollar on October 28 and 31 that the exclusion of the Confidentiality and Non-Disparaging clauses was material for Tsai. Notably, Mr. Layfield represented during the evidentiary hearing that the Confidentiality clause *was* material to Family Dollar when it was included in the first draft, but then it "was no longer a material matter for [Family Dollar]" after Mr. Keady explained it was a material matter for Tsai. *See* ECF No. 110 at 16. In an Affidavit, Mr. Keady attested he told Mr. Layfield that the deletion of the two provisions was "necessary and essential" because inclusion would "ostensibly permit Family Dollar to sue Tsai for a purported breach in the future." ECF No. 92-1 at 3-4.

The attorneys for both parties agree that they spoke on the phone on October 31, 2022. During that phone call, Family Dollar had not yet agreed to the removal of the Confidentiality and Non-Disparaging clauses because Mr. Layfield needed formal approval from his client. As Family Dollar states in its memorandum of support, "The only remaining issues were the confidentiality and non-disparagement terms[.]" ECF No. 91 at 6. Moreover, there is no evidence in the record showing Mr. Layfield told Mr. Keady at any time on or before October 31st that the original proposal, which was marked as subject to Family Dollar's review and comment, was actually reviewed and approved by Family Dollar.

On November 9, 2022, the Court granted Tsai's pending dispositive motions and dismissed this case. Ten days later, on November 19, 2022, Tsai's attorney withdrew its redlined counteroffer:

11

> Matt:
>
> We never received a response to our suggestions contained in the email below [referring to Tsai's proposed redline]. To whatever extent they were interpreted as a counter offer, they are hereby withdrawn; and, to be clear, any and all proposals from you[r] client have already been rejected.
>
> Vince

ECF Nos. 91-6 at 2; 92-1 at 51.

Mr. Layfield responded to Tsai's withdrawal via email on November 23, 2022. ECF No. 91-7 at 2. Within his email, Mr. Layfield indicated that at the time of the October 31, 2022 phone call, the removal of the two provisions had not yet been approved by Family Dollar. *Id.* ("After the explanation of your client's thoughts on why he wanted these provisions removed, I then, accurately, predicted it would take some effort to get our client to agree to remove what is otherwise standard settlement provisions."). At the evidentiary hearing, Mr. Layfield admitted that Family Dollar did not review and approve of Tsai's redlines until November 11th, and November 23rd was the first time he conveyed to Mr. Keady that the deletions would be acceptable to Family Dollar. ECF No. 110 at 17-18, 38. Thus, the Court finds that, despite Family Dollar's arguments, no settlement agreement had been reached on October 31, 2023, because Family Dollar had yet to agree to the removal of two provisions, one of which Family Dollar described as "material" within its very own draft agreement. Mr. Keady expressed to Mr. Layfield that the removal of the Confidentiality and Non-Disparaging clauses was material to Tsai. Here, Tsai repeatedly made it clear through its redline, and in subsequent correspondence, that it would not agree to a settlement without the removal of the Confidentiality and Non-Disparaging provisions.

Tsai cites to *Nuesse v. TomTom, Inc.*, 2013 WL 3157790 (E.D. Mo. June 20, 2013), which is instructive to the issues before this Court. In *Nuesse*, plaintiff brought a motion to

12

enforce a settlement agreement that defendant drafted. After receiving the agreement, plaintiff removed the confidentiality clause and sent back a signed agreement. After not receiving payment as required by the agreement, plaintiff sought to enforce the terms. In determining a settlement agreement was not formed between the parties, this Court explained:

> [A] valid settlement agreement requires a mutuality of agreement, i.e. a "meeting of the minds." *Chaganti & Associates, P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006). A court should determine whether such a meeting of the minds took place by "looking to the intentions of the parties as expressed or manifested in their words or acts." *Id.* An enforceable settlement requires the parties to reach agreement on the material terms of the deal; however agreements that do not expressly resolve ancillary issues may still be enforceable. *Sheng v. Starkey Labs.*, 117 F.3d 1081, 1083 (8th Cir. 1997); *see also Chaganti*, 470 F.3d at 1221.
>
> No enforceable settlement agreement exists between the parties. Although the parties reached an agreement to the monetary value of the settlement, the contract hinged on other material terms not yet agreed to. *See Jackson v. Fed. Reserve Emp. Benefit Sys.*, 2009 WL 2982924 (D. Minn. 2009); *see also Sheng*, 117 F.3d at 1083; *Goddard v. Henry's Food, Inc.*, 291 F. Supp. 2d 1021, 1028 [D. Minn. Sept. 26, 2003] (holding that whether a particular term is material is a legal determination for the court). The confidentiality clause is a material term that was not resolved. *Although confidentiality clauses are not per se material, the parties' arguments reveal that parties considered confidentiality material to the agreement.*
>
> It is evident that both parties had different understandings regarding whether confidentiality and non-disparagement clauses were included in the "standard terms" of a settlement agreement. Because both parties were under conflicting assumptions as to this material term, there was no "meeting of the minds" sufficient to create a contract on April 16, 2013. Therefore, the proposed settlement agreement sent by defendant to plaintiff on May 8, 2013, constituted an offer. When plaintiff made changes to the agreement and returned it to defendant, a counter-offer was made, which was not accepted. Because there was no settlement agreement reached by the parties, attorney's fees and sanctions for publically disclosing the settlement amount are not applicable.

*Id.* at *2 (emphasis added).

Similar to *Nuesse*, Family Dollar designated the Confidentiality clause as a "material part of this Agreement." ECF No. 92-1 at 16-17. In response, Tsai was willing to accept a settlement

13

agreement *only if* the Confidentiality and Non-Disparaging clauses were removed from the settlement agreement. After receiving the proposed settlement agreement from Family Dollar – an agreement which was explicitly noted to still be subject to Family Dollar's own review and comment – Tsai sent back redline edits which fully removed both of these clauses. ECF No. 92-1 at 37-38. On October 31, 2022, the parties spoke on the telephone, and Family Dollar told Tsai, by its own admission in a subsequent email, that removal of these clauses was "going to be an issue," and he "predicted it would take some effort to get [Family Dollar] to agree to remove what is otherwise standard settlement provisions." *See* ECF No. 91-7 at 2. At the evidentiary hearing, Mr. Layfield confirmed his need to follow up with his client, but indicated he told Mr. Keady that "ultimately it would not be an issue for [Family Dollar] to remove [the provisions]." ECF No. 110 at 10.

The Court finds Mr. Layfield's prediction that Family Dollar would ultimately agree to the changes in the proposed agreement was neither acceptance, nor a mutuality of agreement, nor a "meeting of the minds." *See Chaganti*, 470 F.3d at 1221; s*ee also Muldrow v. City of St. Louis*, 2020 WL 3447733, at *3 (E.D. Mo. June 24, 2020) ("Plaintiff's counsel's statement that they 'should be able to reach an agreement' at some time in the future after Plaintiff could review the draft language convinces the Court there was no mutual assent to the non-disparagement clause prior to the time the offer was rescinded."). Moreover, the fact that removal of these clauses could be an "issue" to Family Dollar, evidences their importance.

The Confidentiality provision was designated in the contract as a *material* provision. This was Family Dollar's own designation. The exclusion of the Confidentiality and Non-Disparaging clauses was material to Tsai. Family Dollar admits that during an October 31, 2022 phone call, Mr. Keady explained why Tsai wanted the two provisions removed, and Mr. Layfield indicated

14

he would discuss this with Family Dollar. *See* ECF No. 91-7 at 2. However, it was not until November 23rd, four days *after* Tsai informed Family Dollar it was revoking its redlined counteroffer and rejecting all of Family Dollar's settlement proposals, that Family Dollar confirmed its acceptance of the deletions of these material provisions. *See id.* at 2-3.

The objective manifestations of the parties, as demonstrated by their words and actions, are also significant to the Court. Neither party notified the Court that the parties had reached a settlement, even though a motion for judgment on the pleadings and a motion to dismiss were pending. The exhibits of the parties show that on November 5, 2022, Mr. Keady sent an email to Mr. Layfield asking for a 10-day discovery extension while the parties "explore settlement." Def.'s Ex. D-8. Mr. Layfield agreed to the extension on November 5, and indicated he would follow up with Family Dollar "on Monday concerning the revisions to the Agreement," and he did not question Mr. Keady's use of the phrase "explore settlement." *Id.* The Court finds Family Dollar's argument that it believed an enforceable settlement agreement was formed during counsels' telephone conversation on October 31st is inconsistent with its words and actions of consenting to a discovery extension, promising to follow up with the client on Monday, and not informing the Court that a settlement or tentative settlement had been reached.

Following the rationale in *Nuesse* and *Chaganti,* this Court does not find that a "meeting of the minds" occurred during the October 31st phone call. The Court finds the parties had made significant steps towards reaching a settlement agreement; however, the parties had not agreed on the inclusion or exclusion of the Confidentiality and Non-Disparaging clauses prior to Tsai's revocation of its counteroffer. The two provisions were material to both of the parties. However, Family Dollar did not notify Tsai of its agreement to remove these clauses until four days after Tsai rescinded its counteroffer and rejected all of Family Dollar settlement offers.

15

After careful review of the parties' arguments, emails, affidavits, and actions, the Court determines Plaintiff has failed to establish by clear, convincing, and satisfactory evidence that a settlement agreement was formed. As such, Family Dollar's Motion to Alter or Amend this Court's dismissal and Motion to Enforce the Settlement agreement will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Family Dollar Stores of Missouri, LLC's Motion to Alter or Amend Judgment [ECF No. 90] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Family Dollar Stores of Missouri, LLC's Motion to Enforce Settlement Agreement [ECF No. 93] is **DENIED**.

So Ordered this 21st day of March, 2023.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE